In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 23-1563 & 23-1917

BULK TRANSPORT CORP.,

*Plaintiff-Appellant, Cross-Appellee,*

*v.*

TEAMSTERS UNION NO. 142 PENSION FUND and its TRUSTEES,

*Defendants-Appellees, Cross-Appellants.*

Appeals from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:21-cv-399-PPS-JPK — **Philip P. Simon**, *Judge.*

ARGUED DECEMBER 6, 2023 — DECIDED MARCH 22, 2024

Before FLAUM, EASTERBROOK, and BRENNAN, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Bulk Transport and Teamsters Local 142 have had many collective-bargaining agreements through the years. This case, in which Local 142's multi-employer pension fund seeks withdrawal liability, stems from two agreements that were in effect between 2003 and 2006.

The main agreement was called the Construction Agreement. The other agreement, called the Steel Mill Addendum,

applied to "**Steel Mill Operation Work only**" (boldface and underlining in original). An earlier version of the Addendum covered three other kinds of tasks, but the 2003 version limited its coverage to steel mill work.

In 2004 Bulk Transport landed a contract to haul commodities, a sort of work that until 2003 had been covered by the Addendum but had been excluded by the 2003 revisions. The parties call this the "LISCO work." They agree that none of this haulage counted as "steel mill operation work". Still, the Union insisted that Bulk Transport apply the Addendum and threatened to strike if it did not; the Union also refused to engage in negotiations for an agreement covering the LISCO work. Instead of filing suit or complaining to the NLRB, Bulk Transport capitulated and used the wage rates and pension terms of the Addendum. But it did not tell the Pension Fund that it was now remitting contributions for workers not covered by the Addendum.

In August 2005 Bulk Transport lost the LISCO work (the reasons do not matter) and stopped making pension contributions on behalf of the employees who formerly handled that work. The Pension Fund eventually assessed about $2 million in withdrawal liability under the terms of the Multiemployer Pension Plan Amendments Act (MPPAA), 29 U.S.C. §§ 1381–1405. Bulk Transport disputed the Pension Fund's assessment but paid and demanded arbitration under 29 U.S.C. §1401. Eventually the arbitrator concluded that Bulk Transport had adopted the Addendum by conduct, which meant that the Pension Fund was entitled to the money it claimed. Technically, the Pension Fund had to show under 29 U.S.C. §1385 that the amounts that Bulk Transport paid on account of the LISCO work were "contribution base units"; the

parties agree that this is true only if Bulk Transport was bound, one way or another, to apply the Addendum to the LISCO work, and is not true if Bulk Transport was making contributions not covered by a written agreement. We need not decide whether this agreement is correct.

Arbitrators' legal decisions under §1401 are reviewable, see *Iron Workers Local 473 Pension Trust v. Allied Products Corp.*, 872 F.2d 208, 211 (7th Cir. 1989); *Central States Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 805 (7th Cir. 1999), and the adoption-by-conduct ruling is a legal determination because its propriety turns on the legal effect of an unwritten practice. The district court agreed with the arbitrator's ruling and denied Bulk Transport's request for a refund. 2023 U.S. Dist. LEXIS 40576 (N.D. Ind. Mar. 8, 2023).

Both the pension provisions of collective-bargaining agreements and multi-employer pension plans must be in writing. 29 U.S.C. §186(c)(5)(B) (collective-bargaining agreements that provide pension coverage); 29 U.S.C. §1145 (agreements with pension funds). The language of §1145 reads:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Many written pension agreements refer back to underlying collective-bargaining agreements, as the one at issue here does when specifying which contributions are required. This brings us to §186(c)(5)(B), which says that "the detailed basis on which such [pension contributions] are to be made is specified in a written agreement with the employer". Whether we look at events from the perspective of one statute or the other,

the absence of a written agreement addressing the LISCO work stands out. The Addendum was in writing, but it did not cover the LISCO work.

The arbitrator and the district judge stressed that the Addendum was itself a writing. Both arbitrator and judge invoked the principle that an employer may agree by conduct to abide by an existing agreement. So, for example, if Employer E has a collective-bargaining agreement with Union U, Employer X may agree with U that it will follow the terms of the agreement—and, once X begins to do so, it is bound by those terms. See, e.g., *Bricklayers Local 21 v. Banner Restoration, Inc.*, 385 F.3d 761, 766 (7th Cir. 2004) (collecting cases); *Brookville Health Care Center*, 337 N.L.R.B. 1064 (2002).

The problem with the Pension Fund's reliance on this principle is that adoption by conduct does not change the substantive provisions of the agreement. Adoption adds employers while leaving the terms unaffected. And, even then, adoption by conduct has its principal role in dealing with provisions such as wages and hours, which in labor law need not be reduced to writing. The parties to a collective-bargaining agreement may change most terms by conduct, *Transportation Union v. Union Pacific R.R.*, 385 U.S. 157, 160–61 (1966), so it is easy to see why they may change by conduct the parties to be bound. But the terms of pension contributions to multi-employer plans cannot be changed orally. The precise terms must be in writing—and, having been reduced to writing, must be enforced without any consideration of equitable arguments. *Central States Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148 (7th Cir. 1989) (en banc). See also *Robbins v. Lynch*, 836 F.2d 330, 332 (7th Cir. 1988).

Neither the litigants nor the district court cited any decision holding that adoption by conduct can change the substantive terms of an agreement to contribute to a multi-employer pension plan. We looked too and could not find such a case. Yet unless the language "**Steel Mill Operation Work only**" is erased from the Addendum, Bulk Transport's payment on behalf of the LISCO workers cannot qualify. What's needed is not *adoption* of the Addendum but an *amendment* to the Addendum. If amendment-by-conduct is possible, then multi-employer pension agreements need not be written after all, despite what sections 186(c)(5)(B) and 1145 say.

*Gerber Truck* arose from a situation in which the written documents covered all workers in a defined bargaining unit, but the employer and union agreed that contributions to a multi-employer plan would be made on behalf of only three workers. There was no question what the writings required (all workers) or what the employer did (some workers); nor was there any doubt that the union and employer had agreed orally that the employer should proceed as it did. The pension plan insisted on receiving contributions for all workers covered by the writings. The employer, by contrast, argued that the writings had been amended by conduct or that equitable considerations blocked their enforcement. We rejected those arguments and held that the agreements must be enforced as written, even if that is inequitable, in order to protect pension plans' actuarial calculations and distribution arrangements— for those calculations and arrangements depend on taking the documents as given. Multi-employer pension plans are not privy to oral side deals between employers and unions. For multi-employer plans, enforcing the writings is vital.

This case is the flip side of *Gerber Truck*. In *Gerber Truck* the employer and union orally agreed to contribute on behalf of fewer employees than the written agreements required. Bulk Transport and the Union, by contrast, agreed to contribute on behalf of more workers than the written agreements permitted. In *Gerber Truck* the pension plan insisted that the writings control. Here, by contrast, the Pension Fund argues that the oral agreement controls. We hold that the writings control whether the employer and union orally agree to contribute for more workers than required or for fewer. Through §§ 186(c)(5)(B) and 1145 Congress made the writings conclusive; employers and unions cannot opt out of those statutes orally or by their course of conduct.

In the district court, the Pension Fund asked for an award of attorneys' fees. The judge denied that request, ruling that Bulk Transport's arguments were substantially justified even though they were wrong. Because we have concluded that Bulk Transport's arguments are correct, it follows that the Pension Fund is not entitled to an award of attorneys' fees.

The district court's decision on the merits is reversed, and the case is remanded with instructions to order the Pension Fund to repay the withdrawal liability it collected from Bulk Transport. The district court's decision on attorneys' fees is affirmed.